IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEMORIAL HERMANN HOSPITAL, | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-2771 |
| | § | |
| KATHLEEN SEBELIUS, | § | |
| Secretary of Health and Human Services, | § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

This challenge to a final decision of the Secretary of Health and Human Services is before the Court on the Motion for Summary Judgment [Doc. # 22] filed by Plaintiff Memorial Hermann Hospital and the Cross-Motion for Summary Judgment [Doc. # 23] filed by Defendant Kathleen Sebelius, Secretary of Health and Human Services ("HHS").  Plaintiff filed a Response [Doc. # 25] to Defendant's Motion for Summary Judgment, and Defendant filed a Reply [Doc. # 26].  The Court has reviewed the administrative record and applied persuasive legal authorities, particularly those from various federal appellate courts.  The Court **denies** Plaintiff's Motion for Summary Judgment and **grants** Defendant's Motion for Summary Judgment.

## I.   <u>BACKGROUND</u>

Medicare providers are entitled under the Social Security Act to reimbursement for the "reasonable cost" of furnishing Medicare services, including "an appropriate allowance for depreciation on buildings and equipment used in the provision of patient care." *See* 42 C.F.R. § 413.134(a). The appropriate allowance for such depreciation is determined by prorating the "historical cost" of the asset (which is "the cost incurred by the present owner in acquiring the asset") "over the estimated useful life of the asset." 42 C.F.R. § 413.134(a), (b). Recognizing that this method provides only an approximation of the actual depreciation, the regulations allow (or require) adjustment in certain circumstances. *See Forsyth Memorial Hosp., Inc. v. Sebelius*, 639 F.3d 534, 536 (D.C. Cir. 2011).

The regulations provide that a merger between two or more unrelated corporations is a circumstance in which the depreciated assets may be revalued. *See* 42 C.F.R. § 413.134(*l*)(2)(i). "If the merged corporation was a provider before the merger, then it is subject to the provisions of paragraphs (d)(3) and (f) of this section concerning recovery of accelerated depreciation and the realization of gains and losses." *Id.* If the merger is between two or more related corporations, no revaluation of assets is allowed. *See* 42 C.F.R. § 413.134(*l*)(2)(ii).

To address the application of § 413.134(*l*) to non-profit providers, the Centers for Medicare & Medicaid Services ("CMS") issued a Program Memorandum, PM A-00-76, in October 2000.  In PM A-00-76, the CMS noted that non-profit providers are often motivated to engage in mergers for reasons that may differ from the traditional for-profit merger.  *See* PM A-00-76.  Specifically, mergers involving non-profit providers are often driven more by the charitable interests of the provider and the interests of the community at large than by the interest of the provider in obtaining maximum value for its assets.  *Id.*  As a result, the Secretary, through the CMS, interpreted § 413.134*(l)* as requiring mergers to involve the equivalent of a bona fide sale.

Hermann Hospital ("Hermann") began operations as a charitable hospital in 1925, operated by Hermann Hospital Estates, a testamentary trust established under the will of George H. Hermann.   Hermann and Memorial Hospital System ("Memorial") merged on November 4, 1997.  Memorial acquired Hermann's assets and assumed its liabilities.  The merged entity, Plaintiff in this lawsuit, requested a depreciation adjustment in the amount of $21,731,800.00, on behalf of Hermann.  The "Intermediary" for the Secretary of HHS ("Secretary")[1] concluded that Hermann and

---

[1]     The Secretary "contracts out Medicare's payment and audit functions to fiscal intermediaries, who initially determine whether and how much to reimburse a provider of services under Medicare." *Via Christi Regional Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1261 (10th Cir. 2007) (citing 42 U.S.C. § 1395h).

Memorial, although unrelated before the merger, were not entitled to the depreciation adjustment because they were related after the merger.

Hermann requested review by the Provider Reimbursement Review Board ("PRRB") in accordance with 42 U.S.C. § 1395oo(a).  The PRRB rejected the Intermediary's reliance on the "related party" requirement in PM A-00-76.  The PRRB held that the regulation could not reasonably be interpreted to require that the parties remain unrelated after the merger.  The PRRB rejected Hermann's request for a depreciation adjustment, however, based on the "bona fide sale" requirement in PM A-00-76.

The Administrator of the CMS  upheld the PRRB's decision on the bona fide sale issue, but reversed the PRRB's decision on the related party issue.   The Administrator's decision constitutes the final decision of the Secretary.  *See* 42 U.S.C. § 1395oo(f).

Plaintiff filed this lawsuit under the Administrative Procedure Act ("APA"), seeking judicial review of the Secretary's decision.  The parties filed cross-motions for summary judgment, which are now ripe for review.

## II.    APPLICABLE LEGAL STANDARDS UNDER APA

The Court reviews the Secretary's decision under the APA, which provides that the agency action may be overturned only "if it is arbitrary, capricious, an abuse of

discretion, not in accordance with law, or unsupported by substantial evidence on the record taken as a whole." *Buffalo Marine Servs. v. United States*, 663 F.3d 750, 753 (5th Cir. 2011) (quoting *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010)).   The reviewing court begins with "a presumption that the agency's decision is valid, and the plaintiff has the burden to overcome that presumption by showing that the decision was erroneous." *Id.*

The agency's findings of fact must be upheld if they are supported by substantial evidence. *See id.* (citing *Alwan v. Ashcroft*, 388 F.3d 507, 510-11 (5th Cir. 2004)).   Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion.   It is more than a mere scintilla and less than a preponderance." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).   The Secretary's findings, if supported by substantial evidence, "shall be conclusive." *Windsor Place v. U. S. Dept. of Health and Human Servs.*, 649 F.3d 293, 297 (5th Cir. 2011); 42 U.S.C. § 1320a-7a(e).

"The agency's legal conclusions are reviewed *de novo,* except for questions of statutory interpretation, where the court owes 'substantial deference to an agency's construction of a statute that it administers.'" *Buffalo Marine*, 663 F.3d at 753 (quoting *Alwan*, 388 F.3d at 511 (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984))).   The scope of judicial review is narrow, and

the reviewing court "is not to substitute its judgment for that of the agency." *Hasie*

*v. Office of Comptroller of Currency*, 633 F.3d 361, 365 (5th Cir. 2011).

## III.   "RELATED PARTIES" ISSUE

The assets of a merged corporation can be revalued if the merger "is between

two or more corporations that are unrelated (as specified in § 413.17) . . .." *See*

42 C.F.R. § 413.134(*l*)(2)(i). Section 413.17 defines "related to the provider" to mean

"that the provider to a significant extent is associated or affiliated with or has control

of or is controlled by the organization furnishing the services, facilities, or supplies."

42 C.F.R. § 413.17(b)(1).   "Control" for purposes of § 413.17 means that the

corporation "has the power, directly or indirectly, significantly to influence or direct

the actions or policies of an organization or institution."  42 C.F.R. § 413.17(b)(3).

The Secretary in PM A-00-76 states that the "fact that the parties are unrelated

before the transaction does not bar a related organizations finding as a result of the

transaction.  That is, it is appropriate to compare the governing board/management

team composition after the transaction, even though there was no contemporaneous

coexistence of those boards/teams." PM A-00-76.  Thus, the Secretary interprets the

"related parties" provision of § 413.134(*l*) to require that the parties to a merger be

unrelated both before and after the merger.  *See UPMC-Braddock Hosp. v. Sebelius*,

592 F.3d 427, 435 (3rd Cir. 2010).

The only courts of appeals to address this issue have all held that the Secretary's interpretation of the "related parties" requirement is contrary to the regulation's plain meaning.  *See UPMC-Braddock*, 592 F.3d 427 (3rd Cir. 2010); *Via Christi Regional Med. Ctr. v. Leavitt*, 509 F.3d 1259 (10th Cir. 2007).  As noted by the Third Circuit in its well-reasoned decision, "the only permissible reading of [§ 413.134(*l*)(2)(i)] is that "between" means "pre-merger."  The Third and Tenth Circuits held that the plain language of the regulation "indicates that the 'related parties' inquiry focuses solely on whether the parties to the [merger] were related prior to the transaction – not on whether they were related to the newly created entity."  *See UPMC-Braddock*, 592 F.3d at 437; *Via Christi*, 509 F.3d at 1273.  The Third Circuit noted specifically that the "language about relatedness only refers to the parties to the merger . . . not to the corporation that results from the merger."  *UPMC-Braddock*, 592 F.3d at 438.  A corporation formed as the result of a merger "is not a party to the merger; it is the surviving corporation."  *Id.*

The Third Circuit noted that the Secretary's interpretation "defies common sense."  *Id.*  "In merger transactions, the resulting or surviving corporation will, as a practical matter, be controlled by one or both of the merging parties.  It is hard to imagine a scenario where this would not be the case.  Adherence to the Secretary's

view would render the loss adjustment unavailable in most if not all merger situations, regulating it out of existence." *Id.*

The Court agrees with the Third and Tenth Circuits to conclude that the Secretary's interpretation of the "related parties" language in § 413.134 is contrary to the regulation's plain language. The only relevant inquiry is whether the parties were related (as specified in § 413.17) before the merger. In this case, it is undisputed that Hermann and Memorial were unrelated prior to the merger. As a result, the Court concludes that the decision of the Secretary that the merger failed to satisfy the requirement that the parties to the merger be unrelated is unsupported by the law, and is arbitrary and capricious.

## IV.   "BONA FIDE SALE" ISSUE

Mergers between unrelated parties are "subject to the provisions of paragraphs (d)(3) and (f) . . . concerning recovery of accelerated depreciation and the realization of gains and losses." 42 C.F.R. § 413.134(*l*)(2)(i); *see also St. Luke's Hosp. v. Sebelius*, 611 F.3d 900, 902 (D.C. Cir. 2010); *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557, 559 (9th Cir. 2008); *Via Christi*, 509 F.3d at 1274. Paragraph (f) specifies the circumstances in which gains or losses are allowable following a disposal of depreciable assets. *See* 42 C.F.R. § 413.134(f); *Kennedy*, 526 F.3d at 559. The Secretary has interpreted these regulations to require that revaluation of depreciation

is permitted following a statutory merger only where the merger qualifies as a "bona fide sale" under § 413.134(f)(2). *Kennedy*, 526 F.3d at 559 (citing PM A-00-76).

The Secretary has interpreted "bona fide sale" to mean "an arm's length transaction between a willing and well informed buyer and seller, neither being under coercion, for reasonable consideration." *Kennedy*, 526 F.3d at 559 (citing Provider Reimbursement Manual § 104.24). PM A-00-76 provides that "in evaluating whether a bona fide sale has occurred in the context of a merger or consolidation between or among non-profit entities, a comparison of the sales price with the fair market value of the assets acquired is a required aspect of such analysis." *Id*. at 560 (quoting PM A-00-76). "In the context of a statutory merger between Medicare providers, 'a large disparity between the sales price (consideration) and the fair market value of the assets sold indicates the lack of a bona fide sale.'" *Id.*

Plaintiff challenges the Secretary's interpretation of the regulation as requiring, in the context of a merger, the equivalent of a bona fide sale. Plaintiff argues that the interpretation is a substantive rule that requires the Secretary to provide notice and a period for public comment. Plaintiff argues also that the interpretation requiring a bona fide sale is contrary to the language in the proposed rule and to language in the final rule.

Plaintiff further challenges the Secretary's interpretation of the meaning of "bona fide sale," arguing that it improperly changes the prior definition of "bona fide sale" to require "reasonable consideration" rather than simply "valuable consideration." Plaintiff argues also that the use of a "cost approach" for determining whether there has been reasonable consideration improperly deprives the decision-maker of any discretion.

All courts of appeal to address these two issues have upheld the Secretary's interpretations as reasonable and entitled to deference. *See Forsyth Memorial Hosp. v. Sebelius*, 639 F.3d 534 (D.C. Cir. 2011); *St. Luke's Hosp. v. Sebelius*, 611 F.3d 900 (D.C. Cir. 2010); *Albert Einstein Med. Ctr. v. Sebelius*, 566 F.3d 368 (3rd Cir. 2009); *Robert F. Kennedy Med. Ctr. v. Leavitt*, 526 F.3d 557 (9th Cir. 2008); *Via Christi Regional Med. Ctr. v. Leavitt*, 509 F.3d 1259 (10th Cir. 2007). This Court agrees.

### A.    <u>"Bona Fide Sale" Required</u>

The regulation governing mergers makes explicit reference to § 413.134(f), which lists the categories of asset disposal that trigger depreciation readjustment. *See St. Luke's*, 611 F.3d at 905; *Albert Einstein*, 566 F.3d at 376; *Kennedy*, 526 F.3d at 562. Indeed, as noted by the Tenth Circuit, "Section 413.134(f) is the *only* section expressly permitting depreciation adjustments and defining the exact circumstances under which a provider can seek such an adjustment." *Via Christi*, 509 F.3d at 1274

(emphasis in original).  Section 413.134(*l*) contains no language that would allow a merging party to recognize a gain or loss, but instead incorporates the provisions of § 413.134(f) concerning recovery of accelerated depreciation and the realization of gains and losses.  "The Secretary reasonably read this unrestricted cross-reference to subsection (f) as incorporating subsection (f)(2)'s requirement that a transaction be 'bona fide' if the provider is to revalue the assets it transfers therein."  *St. Luke's*, 611 F.3d at 905.  This Court finds the reasoning and decisions from these courts of appeals to be persuasive.

Plaintiff argues that the Secretary's interpretation is a substantive rule that required formal notice and comment rulemaking under the APA.  This argument was rejected by the Third Circuit in *Albert Einstein*, and this Court agrees with that Court's analysis and decision.  After discussing the distinction between "legislative rules" (which require compliance with the notice and comment requirements of the APA) and "interpretive rules" (which are exempt from the APA's requirements), the Third Circuit held that the Secretary's interpretation as set forth in PM A-00-76 in an interpretive rule that did not require notice and comment rulemaking.

Plaintiff argues also that the Secretary's interpretation is inconsistent with prior statements, including language in the proposed rule, language in the preamble to the final rule, and prior decisions by the PRRB.  The Court is unpersuaded by these

arguments.   The proposed rule stated that a provider corporation to a merger is "subject to those health insurance program policies applicable to terminated providers (*e.g.* see paragraphs (d)(3) and (f) of this section)."  42 FED. REG. 17,486 (Apr. 1, 1977).  The final rule, however, contained different language providing that the merged corporation is "subject to the provisions of paragraphs (d)(3) and (f) of this section concerning recovery of accelerated depreciation and the realization of gains and losses."  42 C.F.R. § 413.134(*l*).  The final rule provides an unrestricted incorporation of paragraph (f) that is not limited to its provisions regarding "terminated providers" but, instead, incorporates all of paragraph (f) that relates to recovery of accelerated depreciation and the realization of gains and losses.  The Secretary's interpretation of the final rule is reasonable and consistent with the language of the final rule.

Plaintiff argues that the Secretary's interpretation of § 413.134(*l*) is refuted by the preamble to the final rule, in which the Secretary used the term "bona fide transaction" when referring to mergers.  The Court is unpersuaded by this argument. Although a merger is a "transaction" that is not technically a "sale," "treating it as a sale pursuant to § 413.134(f)(2) ensures that any depreciation adjustment will represent economic reality, rather than mere 'paper losses.'"  *Via Christi*, 509 F.3d at 1275.

Plaintiff cites various earlier PRRB decisions in other cases in which the PRRB rejected the Secretary's interpretation of § 413.134(*l*) as requiring compliance with the "bona fide sale" requirement of § 413.134(f).  The earlier PRRB decisions cited by Plaintiff are inconsistent with the PRRB decision in this case, as well as the decisions of all four courts of appeals to consider the issue.[2]

The Secretary's interpretation of § 413.134(*l*) is not, as Plaintiff argues, inconsistent with prior agency statements and is, instead, "in keeping with the underlying policy of the Medicare Act."  *Albert Einstein*, 566 F.3d at 381.  The Secretary's interpretation is consistent with the language of the regulations, and is a reasonable construction of them.  As a result, the Secretary's interpretation is entitled to deference.

### B.   "Bona Fide Sale" Defined

The Secretary has defined "bona fide sale" to require both "arm's length bargaining [including] an attempt to maximize any sale price" and "reasonable consideration."  *See Via Christi*, 509 F.3d at 1275.  The Tenth Circuit in *Via Christi* concluded that the Secretary's definition was entitled to deference because it "is consistent with the regulations and early interpretive materials."  *Id.*  The Ninth

---

[2]     Indeed, the PRRB's decision in this case appears to have been influenced (appropriately) by the courts of appeals' decisions rejecting the PRRB's earlier different reasoning.

Circuit reached the same conclusion, finding that the definition "is supported by the text and purpose of the Medicare statutes" and noting specifically that "Providers are entitled to reimbursement only for the 'cost actually incurred' in servicing Medicare patients." *Kennedy*, 526 F.3d at 562.  The District of Columbia Circuit similarly held that the Secretary's interpretation is reasonable because "[f]air market value is a hallmark of a bona fide transaction." *St. Luke's*, 611 F.3d at 905.  Therefore, it is "logical to infer" that "a 'large disparity' between the assets' purchase price and their fair market value indicates the underlying transaction is not in fact bona fide." *Id.* "Requiring a 'reasonable' sale price, which reflects real market value, yields a gain or loss figure that approximates the actual gain or loss the provider has incurred since acquiring the asset." *Id.*  The Court finds the analysis in these cases is persuasive, and concludes that the Secretary's definition of "bona fide sale" is reasonable and entitled to deference.

Plaintiff argues that the Secretary's definition was a substantive change.  The District of Columbia Circuit rejected this argument in *St. Luke's*, finding that the definition was not inconsistent with prior HHS authorities.  *See St. Luke's*, 611 F.3d at 906.  While many prior cases were determined by the PRRB using a less restrictive definition of "bona fide sale," Plaintiff has not identified a case authorizing reimbursement where there was a "large disparity" between the consideration and the

fair market value of the depreciable assets. As the Third Circuit noted, at least as early as 1982, the Secretary "looked to the fair market value when conducting the bona fide sale inquiry." *See Albert Einstein*, 566 F.3d at 377 (citing *Hosp. Affiliates Int'l., Inc. v. Schweiker*, 543 F. Supp. 1380, 1389 (D. Tenn. 1982)).

The Court agrees with the District of Columbia, Third, Ninth and Tenth Circuits to conclude that the Secretary's definition of "bona fide sale" to require both arm's length bargaining, including an attempt to maximize the sales price, and reasonable consideration is entitled to deference.

### C.   "Substantial Evidence" Supporting Secretary's Decision

The Provider applying for a depreciation adjustment bears the burden to prove that a bona fide sale occurred. *See Forsyth*, 639 F.3d at 539 (citing, *inter alia*, 42 U.S.C. § 1395g(a); 42 C.F.R. § 413.24(a)). The Administrator found that Plaintiff failed to prove both arm's length bargaining to obtain a maximum price and reasonable consideration paid for the depreciated assets. As noted previously, the Secretary's decision must be upheld if supported by substantial evidence. "Substantial evidence" is less than a preponderance of the evidence, and the introduction of conflicting evidence by Plaintiff does not negate the existence of substantial evidence supporting the Administrator's decision. *See Harris v. Apfel*, 209 F.3d 413, 417 (5th

Cir. 2000). The Court has carefully reviewed the record and concludes that substantial evidence supports the Secretary's final decision.

### 1.   Arm's Length Bargaining

The Administrator found that the consideration for the assets acquired through the merger between Hermann and Memorial was not the result of arm's length bargaining because Hermann's "primary concern" was to further its mission of operating as a hospital for the benefit of the poor, indigent, and infirm residents of the City of Houston. The Administrator noted also that Hermann's focus on ensuring the post-merger existence of the Hospital consistent with that mission "was paramount to the detriment of arriving at the best price for the sale of the depreciable assets." *See* Administrator's Decision, Administrative Record ("AR") at 000021.

The Administrator's decision is supported by substantial evidence in the record. There is evidence in the record indicating that Hermann was not motivated to gain maximum value for the depreciable assets but was, instead, motivated to ensure that the hospital continued to operate in a manner consistent with its original charitable purpose. Most compelling is the Final Judgment entered by the Probate Court of Harris County approving the merger. The Probate Court noted that the "dominant purpose of the Testator . . . was to provide for the construction, maintenance and operation of the Hospital to serve the poor, indigent and infirm residents of the City

of Houston." *See* Final Judgment, AR at 001258.  The Probate Court found also that the Trustees' had a fiduciary duty to maintain "the Hospital with respect to charity care and community benefits in the rapidly changing and emerging health care environment." *See id.*, AR at 001260.  The Probate Court found that the Trustees, in the exercise of their fiduciary duties, had "undertaken an extensive review of Hermann Hospital and how it can best fulfill the intent and purpose of the Testator and the charitable mission of the Trust in the current health care environment" and that the Trustees had "researched various courses of action designed to ensure the future viability of Hermann Hospital and its ability to continue the Trust's mission and to carry out the intent of the Testator." *See id.*, AR at 1260-61.  The Probate Court found that a failure to approve the merger "would substantially impair the accomplishment of the intent of the Testator and the purposes of the Trust." *Id.*, AR at 001261.  Finding that the merger would further the intent "of continuing the maintenance and operation of Hermann Hospital into the future as a hospital for the benefit of the poor, indigent, and infirm residents of the City of Houston," the Probate Court approved the merger.  *See id.*, AR at 001261.

There is substantial evidence that the merger terms were not the result of arm's length bargaining with the goal of obtaining maximum consideration for Hermann's depreciable assets.  There is no evidence that the parties' negotiations were focused

on arriving at a fair market price for Hermann's assets. The evidence shows that Hermann was motivated, instead, to ensure the continued operation of the hospital as a health care facility for the poor, indigent, and infirm residents of Houston as intended by the Testator. There is nothing wrong with such motivation; indeed, it is laudable. It is substantial evidence, however, "that the parties did not negotiate the terms of the merger at arm's length." *See Albert Einstein*, 566 F.3d at 379; *see also Via Christi*, 509 F.3d at 1276 (noting that provider's "primary goal was to make a decision that would advance its ministry").

### 2. Reasonable Consideration

The Administrator found that the merger did not involve the exchange of reasonable consideration for Hermann's depreciable assets because there was a large disparity between the value of the assets transferred in connection with the merger and the consideration received for those assets. The Administrator's decision is supported by substantial evidence in the record.

More specifically, in accordance with PM A-00-76, the Administrator compared the value of Hermann's assets transferred in connection with the merger with the consideration exchanged for those assets. The uncontroverted total net book value of the assets was approximately $755.5 million, and the undisputed value of the liabilities assumed was approximately $373 million. Based on the "large disparity"

between the value of the assets and the consideration exchanged for them, the Administrator concluded that there was no bona fide sale.

Plaintiff argued for the value of the assets to be adjusted down to $490 million, based primarily on the inclusion of almost $331 million in limited use assets. Even accepting Plaintiff's argument and ignoring the entire $331 million in limited use assets, the book value of the assets still exceeded the consideration by almost $72 million. This is significantly more than the disparities that supported a finding of no "reasonable consideration" in *Via Christi*, 509 F.3d at 1277 ($3 million disparity), *Kennedy*, 526 F.3d at 563 ($19.5 million), and *Albert Einstein*, 566 F.3d at 379 ($32 million).

Plaintiff argued also that the value of Hermann as a "going concern" was significantly less than its book value. The Administrator rejected this argument, noting that it was inconsistent with the Medicare requirement that the actual book value of the assets be the primary focus. The Administrator noted that the revaluation in issue is a revaluation of depreciable assets. Citing to PM A-00-76, the Administrator correctly concluded that, in circumstances such as this where there has not been an appraisal, the best means of determining the fair market value of *those* assets for purposes of the Medicare Act is the cost approach analysis because it is the only method that produces a discrete indication of the value of those individual assets.

Alternate methods, such as the "market approach" and the "income approach," produce a valuation of the business as a whole, rather that a valuation of the individual assets at issue.

The Administrator's decision that the merger did not involve the exchange of reasonable consideration is supported by substantial evidence in the administrative record, specifically the large disparity between the fair market value of the assets, even eliminating limited use assets, and the consideration exchanged for those assets.[3] As a result, the Administrator's decision that the merger did not constitute a bona fide sale is upheld.

## V.   **CONCLUSION AND ORDER**

The Secretary has interpreted the "related parties" language for purposes of § 413.134(*l*)(2) as requiring that the parties to a merger be unrelated both before and after the merger.  The plain language of the regulations and common sense make it clear that the "related parties" inquiry is relevant only as to the parties' status prior to

---

[3]   Plaintiff argues that the reasonableness of the consideration is established by the Final Judgment of the Probate Court finding that the Trustees complied with their fiduciary duties.  As discussed above, it is clear from the Final Judgment that the fiduciary duty at issue was the Trustees' obligation to maintain the operation of Hermann as a charitable hospital.  There was no discussion regarding whether the Trustees attempted to maximize the consideration paid for the hospital's assets.  As a result, the Court finds this argument unpersuasive.

the merger, not after the merger is completed.   Accordingly, the Secretary's interpretation is contrary to the clear language of the regulation.

The Secretary has interpreted the regulations regarding mergers as to contain a "bona fide sale" element, and has interpreted "bona fide sale" to require "reasonable consideration" based on a comparison of the sales price with the fair market value of the assets acquired.   Based on the persuasive legal authority from the Courts of Appeals for the District of Columbia, Third, Ninth and Tenth Circuits, the Court concludes that this interpretation is reasonable.   The administrative record contains substantial evidence to support the Secretary's finding that the merger between Hermann and Memorial did not involve arm's length bargaining or reasonable consideration.   As a result, the merger did not involve a bona fide sale for which the revaluation of depreciation is permitted.   As a result, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 22] is **DENIED** and Defendant's Motion for Summary Judgment [Doc. # 23] is **GRANTED**.   The Court will issue a separate Final Order.

SIGNED at Houston, Texas, this 31st day of **July, 2012**.

Nancy F. Atlas
United States District Judge